1
2
3
4                    **UNITED STATES DISTRICT COURT**

5                          **DISTRICT OF NEVADA**

6                                   * * *

7    L.R.,

8                    Petitioner,                    Case No. 2:25-cv-02019-RFB-BNW

9            v.                                     **ORDER**

10   KRISTI NOEM, *et al.*,

11                   Respondents.

12

13           Before the Court are Petitioner L.R.'s[1] Amended Petition for Writ of Habeas Corpus (ECF

14   No. 13), Motion for Temporary Restraining Order (ECF No. 11), and Amended Motion (Second)

15   for Temporary Restraining Order (ECF No. 30). Through his pleadings, Petitioner challenges his

16   continued civil detention by Respondents on due process and statutory grounds, and further

17   challenges Respondents' attempts to remove him to a third-country, Mexico, as without due

18   process and in violation of the Administrative Procedure Act ("APA"). For the foregoing reasons,

19   the Court grants L.R.'s Petition, ordering his immediate release and prohibiting Respondents from

20   removing Petitioner to Mexico, or any other third-country, until he has received due process in the

21   form of a full adjudication of his fear-based claims before an immigration judge and any

22   subsequent appeals.

23   **I.    PROCEDURAL HISTORY**

24           On October 17, 2025, Petitioner filed a petition for a writ of habeas corpus, as well as a

25   concurrent motion for protective order in the United States District Court for the District of

26   Nevada. See ECF Nos. 1-2. On October 22, 2025, the Court screened the petition and ordered that

27   _____

28        [1] Pursuant to Petitioner's Motion for Leave to Proceed under Pseudonym, which the Court granted, the Court
     will refer to Petitioner under pseudonym in the instant Order. See ECF No. 22.

Respondents show cause, pursuant to 28 U.S.C. § 2243, why the Petition should not be granted by November 5, 2025, giving Petitioner until November 12, 2025, to file their Traverse. See ECF No. 3. The Court also granted Petitioner's request for a protective order. See ECF No. 22.

Counsel for Respondents filed a Notice of Appearance on October 27, 2025, and filed their Return to the show cause order on November 5, 2025. See ECF Nos. 4, 6. Petitioner filed a Traverse on November 11, 2025, and through it, sought leave from this Court to file an amended petition to address recent developments that impacted the instant case. See ECF No. 7. Finding good cause, the Court granted the request, allowing Petitioner leave to file an amended petition on or before November 25, 2025, and setting Return and Traverse deadlines of December 2, 2025, and December 9, 2025, respectively. See ECF No. 8. On November 21, 2025, the parties filed a stipulation seeking extensions for the Return and Traverse, which the Court granted, making the new deadlines December 10, 2025, and December 17, 2025, respectively. See ECF Nos. 9-10.

However, on November 22, 2025, Petitioner filed a Motion for Temporary Restraining Order, wherein Petitioner described an alarming incident during which Respondents came dangerously close to removing Petitioner from the United States, even though his removal has been judicially stayed by the Ninth Circuit. See ECF No. 11. Without ruling on the Motion, this Court issued an order for injunctive relief on November 23, 2025, to preserve its jurisdiction over Petitioner's constitutional claim and prevent the violation of the Ninth Circuit's Order. See ECF No. 12. The November 23, 2025 order (1) enjoined Respondents from removing Petitioner from this District; (2) ordered Respondents Nevada Southern Detention Center ("NSDC") and warden Mattos to not allow Petitioner be removed or transported from NSDC absent written order; and (3) ordered Respondents' counsel to confirm via filing under seal that it had communicated and disseminated the Order with the DHS/ICE officials responsible for overseeing removals from NSDC. See id.

On November 25, 2025, Petitioner filed a verified, amended petition for a writ of habeas corpus. See ECF No. 13. The parties then sought, and the Court granted, a stipulation for an extension of time for Federal Respondents to file their Return, making the Respondents' Return to the Amended Petition due by December 12, 2025, and Petitioner's Traverse due by December 19,

2025. See ECF No. 16-17. Respondents filed a Response to the Motion and Return to the Amended Petition on December 12, 2025. See ECF Nos. 18-19. Petitioner filed their Reply to the Response, and Traverse to the Return, on December 18, 2025, and December 19, 2025, respectively. See ECF Nos. 20-21.

On January 14, 2026, Petitioner filed a status report regarding related proceedings before the Ninth Circuit, informing the Court that the Ninth Circuit had denied the government's motion for summary dismissal and stayed proceedings in L.R.'s case pending a decision in a different, unidentified case, in addition to denying Petitioner's motion to stay removal. See ECF No. 23. That same day, Petitioner filed a Motion for Leave to File Supplemental Authority, as there was a recent on-point decision in this District concerning third country removal due process challenges. See ECF No. 24. Accordingly, the Court granted the sought leave. See ECF No. 28.

On January 21, 2026, Petitioner filed an additional emergency motion for Temporary Restraining Order describing another alarming incident at NSDC wherein an ICE officer falsely told Petitioner that he could be put on a plane to El Salvador imminently and strongly suggested Petitioner buy a plane ticket to Mexico to avoid deportation to El Salvador. See ECF No. 30.

The Court's Order on the Amended Petition and pending motions follows.

## II.    JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S.

670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and removal, falls "within the 'core' of the writ of habeas corpus") (per curiam) (citations and quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention . . . ."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

### III.    FACTUAL BACKGROUND

The Court makes the following findings of fact as to Petitioner.[2] L.R. is a citizen and national of El Salvador who left his home country as a minor and most recently entered the United States in 1987—without inspection by immigration authorities—at the age of sixteen. See ECF No. 13 at 8. Petitioner is now fifty-four years old, and he has spent over half of his life incarcerated in the United States. See id. at 2-3. After a string of criminal convictions in the late 1990's,[3] Petitioner spent over 25 years in prison before being granted parole in November 2022. See id. at 9. Only a few months later, in April 2023, Petitioner was civilly detained by immigration authorities and has remained in their physical custody in Pahrump, Nevada, ever since. See id.

---

[2] Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 195), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause—i.e., to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken at face value. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true *unless* they are contradicted by relevant evidence. See id. To reach the truth of these matters, district courts "may fashion appropriate modes of procedure" to "summarily hear and determine the facts[ ] and dispose of the matter as law and justice require." Harris, 394 U.S. at 299 (quoting 28 U.S.C. § 2243) (quotation marks omitted). In fact, it is "the inescapable obligation of the courts" to vindicate their "habeas corpus jurisdiction" by fashioning "methods for securing facts where necessary." Id.

[3] In 1996, Petitioner received two criminal convictions in California, one for possession/selling of a sawed-off shot gun, and another for possession/manufacturing/selling a dangerous weapon. See ECF No. 13 at 8. In 1997, Petitioner was arrested twice, once in Iowa for possession of controlled substance with intent to deliver and carry concealed weapon, and once in Colorado for illegal entry, though there was no further disposition beyond arrest in either of these cases. See id. Also in 1997, Petitioner was convicted of gang-related crimes—first-degree murder, two counts of attempted first-degree murder, use of a firearm, and possession of a firearm by an ex-felon, *inter alia*—and was sentenced to multiple life sentences. See id. at 8-9.

Upon entering the United States as a teenager, Petitioner became a member of Mara Salvatrucha, more commonly known as MS-13. See id. at 3. This gang membership led Petitioner to engage in a course of criminal conduct that concluded in 1997, when he began serving a lengthy prison sentence for gang-related crimes, including first-degree murder. See id. at 8-9. When he entered prison, Petitioner joined the Mexican Mafia prison gang. ECF No. 13 at 9.  However, over the course of his decades of detention, Petitioner debriefed from both MS-13 and the Mexican Mafia. See id. He is no longer associated with either group and was granted parole on November 29, 2022. See id.

After being paroled, Petitioner was ordered removed to El Salvador pursuant to a final administrative order of removal on April 25, 2023. See ECF No. 13-1 at 2. The next day, Petitioner was taken into ICE detention, and he has now been civilly detained by Respondents over two and a half years to-date. See ECF No. 13 at 4.

A month later, Petitioner had a Reasonable Fear Interview ("RFI") on May 26, 2023. See id. at 9. Petitioner did not have an attorney present during the RFI, which was conducted by phone. See id. Petitioner identified himself to the asylum officer as a drop-out of MS-13 and the Mexican Mafia and explained to the asylum officer that (1) his status as a drop-out of these groups is a betrayal of the organizations for which he fears he will be tortured or killed if he is removed to El Salvador, and (2) because he was part of MS-13 and has many visible tattoos to show for it, Petitioner explained he also fears the Salvadoran government would imprison him with other MS-13 members who would torture or kill him. See id. Based on this interview, Petitioner was found credible and to have established a reasonable fear of torture. See id. On June 1, 2023, the matter was referred to an Immigration Judge ("IJ"), and Petitioner was placed in withholding-only proceedings. See ECF No. 13-1 at 11.

Petitioner applied for deferral of removal to El Salvador under the Convention Against Torture ("CAT"), presenting four theories/sources of torture he could face in El Salvador: MS-13, the Barrio 18 gang, law enforcement and prison officials, and vigilante death squads. See ECF No. 13 at 10. Ultimately, after a lengthy appeals process in these withholding-only proceedings, the Board of Immigration Appeals ("BIA") found that the record—which included extensive

documentation and declarations from qualified country conditions experts—supported a finding that Petitioner faces a greater than 50 percent aggregate risk of torture from the four sources he theorized would torture or kill him. See id. at 10-11; ECF No. 13-1 at 4-7. Accordingly, the BIA sustained Petitioner's appeal and granted him deferral of removal to El Salvador under CAT in a decision filed on March 14, 2025. See ECF No. 13-1 at 4. Of note to the instant claims, the only country of removal considered in these proceedings, through March 2025, was El Salvador. See ECF No. 13 at 11.

However, on June 25, 2025, DHS officers abruptly woke Petitioner at 1:00 A.M. and began an attempt to remove him to Mexico; he was simultaneously given a notice of the government's intention to do so. See id. at 11; ECF No. 13-1 at 9. DHS then transported Petitioner to the ICE office in Las Vegas and told him he was getting on a bus to Mexico, instructing him to stay quiet about his criminal record when asked by Mexican authorities and to just "go with the flow." See ECF No. 13 at 11; ECF No. 13-1 at 60. Concurrently, Petitioner's counsel sought information from DHS on what status Petitioner would have in Mexico and how long he would be permitted to stay in Mexico, yet he received no answers. See ECF No. 13-1 at 63-64.

DHS—on that date and since—has been unsuccessful in removing Petitioner to Mexico. See generally ECF No. 13 at 8-13. Petitioner has the following fears associated with being removed to Mexico: (1) he fears Mexico will try to deport him to El Salvador, a country he already has CAT protection for the reasons previously set forth, and (2) he fears retaliation based on his prior membership with the Mexican Mafia. See ECF No. 13 at 12. Accordingly, on June 27, 2025, Petitioner moved for the BIA to (1) issue an emergency stay of removal, and (2) reopen his withholding-only case to pursue protection under CAT from removal to Mexico. See id. The BIA denied the emergency motion to stay that same day and has not adjudicated the motion to reopen to-date. See id. Also on June 27, 2025, Petitioner moved for the Ninth Circuit to reopen his withholding-only case to pursue protection under CAT from his removal to Mexico. See id. Petitioner also filed an emergency motion to stay his removal at the Ninth Circuit, and the Circuit Court issued a stay of removal pending further order of the court. See id. The Ninth Circuit has not yet adjudicated the motion to reopen but recently denied the motion to stay removal. See id.;

ECF No. 23-1. To date, no court has upheld the validity of the order DHS presented to Petitioner in June 2025 stating that he would be removed to Mexico. See ECF No. 13 at 4.

The only "process" Petitioner has received to-date involving his fears related to removal to Mexico was an interview with a DHS officer on November 5, 2025.[4] See id. at 13; ECF No. 13-1 at 60-61. It was unclear if Petitioner had the right to be represented by counsel at this interview—he was not given an opportunity to consult counsel prior to being transported approximately one week earlier to the Las Vegas ICE office, also supposedly for a credible fear interview—and he was not offered an opportunity to submit evidence or argument at the interview itself. See ECF No. 13 at 13. While DHS has indicated that it found Petitioner failed to establish the requisite likelihood of persecution or torture should he be removed to Mexico, Petitioner has received no information as to the criteria or reasoning used to make that finding. See id.

Despite the Ninth Circuit's stay of removal, Respondents seemed to, again, come close to removing Petitioner to Mexico on November 20, 2025. See ECF No. 11. ICE officers once again told Petitioner he was going to be deported to Mexico and transported him on a bus to the Las Vegas Harry Reid Airport, where nearly all other men on the bus had their names called one by one, each then led off the bus, presumably to an airplane. See id. Respondents framed this incident as "L.R. was inadvertently processed for removal at the NSDC," and claimed that DHS has no intention to remove or transfer L.R. in violation of court orders. ECF No. 19-1 at 4. This Court enjoined Respondents from removing Petitioner from the United States District of Nevada, staying his removal from the United States, absent express written authorization from the Court in response. See ECF No. 12.

Despite this Court's Order, on January 17, 2026, an ICE Officer visited L.R. at NSDC and falsely told L.R. that his "case is done," and that he could be put on a plane to El Salvador the very next day. See ECF No. 30 at 5. After Petitioner expressed fear and confusion at these statements, the officer urged L.R. to buy his own plane ticket to Mexico to avoid deportation to El Salvador. See id.

---

[4] Respondents frame this as a "Third Country Screening interview," but provide no other information about the associated process, criteria, or findings. ECF No. 19-1 at 3.

1    **IV.    LEGAL STANDARDS**

2       **A.  Statutory Scheme**

3          By way of background, the Immigration and Nationality Act ("INA") provides a "complex

4    statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th

5    Cir. 2008). Specifically, four statutes empower the government "to detain non-citizens who have

6    been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." Avilez

7    v. Garland, 69 F.4th 525, 529 (9th Cir. 2023) (footnotes omitted) (citation modified). A non-

8    citizen's place within this web of statutes is significant as it "can affect whether [their] detention

9    is mandatory or discretionary, as well as the kind of review process available to [them] if

10   [they] wish[ ] to" challenge their detention. See id. (citation omitted). In the instant case,

11   Respondents argue that Petitioner is subject to mandatory detention under § 1226(c), while

12   Petitioner argues that § 1231(a) is the proper detention authority. See ECF No. 13 at 15; ECF No.

13   19 at 4-6. As such, these are the only provisions of the INA that are relevant to this case.

14          ***i.  Section 1226(c)***

15          Initially, § 1226(c) requires the Attorney General of the United States to detain non-

16   citizens who fall "into one of several enumerated categories involving criminal offenses and

17   terrorist activities." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Under this provision,

18   detention is mandatory. See Avilez, 69 F.4th at 530 (citing Jennings, 583 U.S. at 305-06). But it is

19   not infinite. Rather, § 1226(c) "authorize[s] detention *pending a decision on whether [a]*

20   *noncitizen is to be removed from the United States*." Id. at 537 (citations and quotation marks

21   omitted) (emphasis added). Put differently, "detention under § 1226(c) has a 'definite termination

22   point:' the conclusion of removal proceedings." Jennings, 583 U.S. at 304 (quoting Demore v.

23   Kim, 538 U.S. 510, 529 (2003)).

24          ***ii.  Section 1231(a)***

25          Meanwhile, § 1231 governs the detention of non-citizens who are subject to final orders of

26   removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th

27   Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a)

28   supplies DHS's detention authority once a non-citizen is subject to a final removal order). When

a non-citizen "is ordered removed, [the Department of Homeland Security ("DHS")] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this period, "detention is mandatory." Id. (citing § 1231(a)(2)). A non-citizen's removal period begins on the latest of three dates: (1) when their removal order becomes administratively final; (2) when a court that stayed deportation enters a final order regarding their deportation; or (3) when they are released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8 U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Pursuant to § 1231(a)(6), DHS may continue to detain a non-citizen who is: (1) inadmissible; (2) removable under certain provisions of § 1227(a); (3) a risk to the community; or (4) unlikely to comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)). "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

Once a non-citizen enters the post-removal period, they are subject to detention *insofar* as their deportation is reasonably foreseeable. As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). But a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat." Zadvydas, 533 U.S. at 699 (citation omitted). Accordingly, the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Supreme Court also held that six months is a presumptively reasonable period of time to deport a non-citizen. See Zadvydas, 533 U.S. at 700–701. In practice, this means that DHS can presumptively

detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). "After that point, if the [non-citizen] 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the [g]overnment must either rebut that showing or release the [non-citizen]." Guzman Chavez, 549 U.S. at 529 (citation omitted) (quoting Zadvydas, 533 U.S. at 701).

In short, post-removal-period detention violates the INA *and the Constitution* when a noncitizen's removal is not reasonably foreseeable. Cf. Arteaga-Martinez, 596 U.S. at 579 (citation omitted) (reaffirming that Zadvydas construed 8 U.S.C. § 1231 "in light of the Constitution's demands.").

### B. Withholding-only Proceedings

Concurrent to removal proceedings, noncitizens are also entitled to seek various protections, including, *inter alia*, asylum, statutory withholding of removal, and withholding of removal under regulations implementing the Convention Against Torture (CAT). See 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary, but others, like withholding of removal pursuant to CAT protections, are mandatory, meaning that the protection must be afforded if the conditions are met. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; see also Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."); Gutierrez-Alm v. Garland, 62 F.4th 1186, 1200-01 (9th Cir. 2023) ("The Convention Against Torture provides mandatory relief for any immigrant who can demonstrate that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'") (quoting Hamoui v. Ashcroft, 389 F.3d 821, 826 (9th Cir. 2004)). When seeking withholding of removal pursuant to the regulations implementing CAT, once a noncitizen makes a showing of reasonable fear of persecution or torture should they be removed to a country, that noncitizen is placed in "withholding-only proceedings" before an immigration judge *exclusively* to seek withholding or deferral of removal. 8 C.F.R. §§ 208.31(b), (e); see also 8 C.F.R. §

1  1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a

2  determination of whether the [noncitizen] is eligible for withholding or deferral of removal.").

3        "When a [noncitizen] applies for withholding-only relief, he does so as to a particular

4  country." Guzman Chavez, 594 U.S. at 535-36. The Supreme Court has stated that

5  "an order granting CAT relief means only that, notwithstanding the order of removal,

6  the noncitizen may not be removed to the designated country of removal, at least until conditions

7  change in that country. But the noncitizen still 'may be removed at any time to another country

8  where he or she is not likely to be tortured.'" Nasrallah v. Barr, 590 U.S. 574, 582 (2020) (quoting

9  and citing to 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)). Thus, a grant of withholding, pursuant to

10  statute or CAT, affects only *where* a noncitizen may be removed to; it does not impact the validity

11  of the removal order itself, *i.e.*, it does not impact *whether* a noncitizen may be removed, as the

12  underlying removal order remains final, valid and enforceable even when a citizen has been

13  granted these protections. See 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); Guzman Chavez,

14  594 U.S at 536; Lanza v. Ashcroft, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of

15  withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit

16  removal to a non-risk country").

17      **C.  Third-Country Removal**

18        As this Court has recently stated: "[b]ecause the removal proceedings happen on one track,

19  while withholding and CAT proceedings happen on another track, a situation may arise where the

20  Government has an order of removal but no country that an IJ has authorized for that removal."

21  Cavieres Gomez v. Mattos, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *2 (D. Nev.

22  Nov. 6, 2025). In instances where the government cannot remove a noncitizen to the country listed

23  on that individual's removal order, including, *inter alia*, instances where a grant of withholding

24  bars removal of the noncitizen to said country, the government is permitted to remove the

25  individual to any country that will accept them. 8 U.S.C. § 1231(b)(2)(E)(vii). These kinds of

26  removals are known as "third-country removals."

27        Third-country removal is not unlimited and is subject to the same mandatory protections

28  that bound removal or withholding-only proceedings; the INA specifically bars deportation to

countries in which the noncitizens would face persecution or torture. See 8 U.S.C. § 1231(b)(3)(A) ("Notwithstanding paragraphs [b](1) and [b](2), the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.").

## V.    DISCUSSION

Petitioner's detention is governed by 8 U.S.C. § 1231(a), not § 1226(c), because he is subject to a final order of removal. Moreover, he is not subject to mandatory detention as his removal period ended at minimum seven months ago. Based on this timeline, his ongoing detention is no longer presumptively reasonable. Moreover, it is unlawful because his removal from the United States is not reasonably foreseeable: Petitioner has been granted withholding of removal pursuant to the CAT, which prohibits his removal to El Salvador, and the government has failed to make a showing that removal to Mexico or any other third-country is likely in the foreseeable future.

Additionally, and to be clear, while Respondents repeatedly assert that Petitioner's criminal history bars his release, even going so far as to frame the case as Petitioner "seeking for this court to overlook his murder conviction" and gang affiliations, these arguments have zero bearing on the matter and claims before the Court. See ECF No. 19 at 10. The Court acknowledges Petitioner's significant criminal history while also acknowledging that he has served a lengthy sentence and been paroled for these crimes. That alone is all the Court need consider when applying the law and making its findings in the instant case. For these reasons, as explained in more depth below, the Court finds Petitioner is being held in violation of the INA and his due process rights under the Fifth Amendment, and further finds that Petitioner is entitled to meaningful notice and an opportunity to present a fear-based claim to an immigration judge before a lawful third-country removal may occur.

### A.  Proper Detention Scheme: § 1226(c) and § 1231(a)

As a preliminary matter, the Court addresses Respondents' assertion that Petitioner is detained pursuant to § 1226(c) and finds Petitioner cannot be detained pursuant to § 1226(c);

1    instead, he falls squarely within the ambit of § 1231(a) because he has a final removal

2    order. Respondents spend the majority of their Return arguing that Petitioner is "subject to

3    mandatory detention authority under 8 U.S.C. § 1226[(c)]" based on his criminal history and

4    because Petitioner has a pending petition for review before the Ninth Circuit, which exclusively

5    addresses his rights concerning a hearing about his fears of persecution or torture should he be

6    removed to Mexico. See ECF No. 19 at 4-6, 8; ECF No. 21 at 2-3. Respondents entirely fail to

7    make any argument that attempts to justify Petitioner's detention under § 1231(a). In doing so,

8    Respondents are simply incorrect.

9        It is well-established that § 1226(c) does not supply *carte blanche* detention authority; put

10   differently, Respondents cannot invoke this provision to detain a non-citizen whenever they

11   want to. Rather, "detention under § 1226(c) has a 'definite termination point:' the conclusion of

12   removal proceedings." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (quoting Demore v. Kim,

13   538 U.S. 510, 529 (2003)). Petitioner's removal proceedings concluded *at least*[5] ten months ago

---

14       [5] The immigration court proceedings that occurred between the removal order issued April 25, 2023, and the

15   final order from the BIA deferring removal issued March 14, 2025, were withholding-only proceedings, entirely
     distinct from any removal proceedings occurring on a separate "track." See ECF No. 13-1 at 4-7, 11-57. Thus, the

16   Court can determine from the record that the removal period started at an earlier, though unknown, date, as Petitioner's
     immigration court proceedings were entirely closed following the March 14 order. See ECF No. 21 at 6. Therefore,

17   the removal order must have become administratively final sometime prior to March 14, 2025, potentially as early as
     2023. As previously stated, a non-citizen's removal period begins on the latest of three dates: (1) when their removal

18   order becomes administratively final; (2) when a court that stayed deportation enters a final
     order regarding their deportation; or (3) when they are released from non-immigration detention. See 8 U.S.C.

19   § 1231(a)(1)(B). Petitioner was paroled from non-immigration detention in 2022. Further, the only mention of a stay
     in the record is an automatic stay of removal from the Ninth Circuit that is related only to withholding of removal and

20   CAT, without questioning the finality of the underlying removal order. As explained in the Order, this does not impact
     the applicability of § 1231(a) and is therefore not the kind of stay the second date option is concerned with. This leaves

21   the first option, the date the removal order becomes administratively final, as the likely demarcation for when the
     removal period began in this case. An order of removal becomes become final in any of the following circumstances:

22       (a) Upon dismissal of an appeal by the Board of Immigration Appeals; (b) Upon waiver of appeal

23   by the respondent; (c) Upon expiration of the time allotted for an appeal if the respondent does not
     file an appeal within that time; (d) If certified to the Board or Attorney General, upon the date of the

24   subsequent decision ordering removal; (e) If an immigration judge orders an alien removed in the
     alien's absence, immediately upon entry of such order; or (f) If an immigration judge issues an

25   alternate order of removal in connection with a grant of voluntary departure, upon overstay of the
     voluntary departure period, or upon the failure to post a required voluntary departure bond within 5

26   business days. If the respondent has filed a timely appeal with the Board, the order shall become
     final upon an order of removal by the Board or the Attorney General, or upon overstay of the

27   voluntary departure period granted or reinstated by the Board or the Attorney General.

28   8 C.F.R. § 1241.1. Without further information, the Court cannot determine the exact date Petitioner entered the
     removal period, but it can determine that that date was, at the very latest, 90 days after the March 14, 2025, BIA order
     was issued, *i.e.*, June 12, 2025.

1    when his withholding-only case was closed on March 14, 2025, upon the issuance of a final order

2    by the BIA deferring removal to El Salvador, which wholly closed his case in immigration court.

3    See ECF No. 13-1 at 4-6; ECF No. 13 at 5.

4         Respondents appear to confuse the pending proceedings before the Ninth Circuit with first

5    instance appellate review of orders of removal. They cite heavily to Prieto-Romero v. Clark, 534

6    F.3d 1053 (9th Cir. 2008), throughout their argument, despite Prieto being principally concerned

7    with a habeas petitioner who had a pending, first instance petition of review of a removal order

8    before the circuit court. See ECF No. 19 at 4-5, 9, 11. In Prieto, the Ninth Circuit stated that "when

9    a court of appeals issues a stay of removal pending its decision on a [noncitizen's] petition for

10   review of his removal order, the removal period begins only after the court denies the petition and

11   withdraws the stay of removal." 534 F.2d at 1059. However, the instant case is factually dissimilar

12   in posture from Prieto: unlike the petitioner in Prieto, L.R. is not seeking review of, or otherwise

13   challenging, his removal order. Rather, he is seeking review from the Ninth Circuit exclusive to

14   where he may be removed to via the reopening and/or review of his withholding-only proceedings

15   limited to withholding of removal as it relates to third-country removal to Mexico, based on the

16   recent indications by Respondents that they intend to send Petitioner to Mexico, despite his fears

17   of persecution and torture there.

18        A more suitable analogue is found in Guzman Chavez, 594 U.S. 523, which squarely

19   addresses the issue of whether a removal order may become administratively final while

20   withholding-only proceedings are ongoing. Respondents' attempts to distinguish that case from

21   the instant matter are misguided. As summarized by the Supreme Court last term, "[i]n Guzman

22   Chavez, the [noncitizens'] removal had been ordered by DHS, and that determination was not

23   being challenged, but proceedings in which they were seeking withholding of removal were still

24   in progress." Riley v. Bondi, 606 U.S. 259, 269 (2025). As was the case for the petitioners in

25   Guzman Chavez, the petitioner in this case has been ordered removed and has raised a collateral

26   challenge to a specific aspect of his deportation in concurrent, withholding-only proceedings. See

27   594 U.S. at 532. The parties to L.R.'s pending proceedings before the Ninth Circuit are barred

28   from "raising or considering any other issues, including but not limited to issues of admissibility,

- 14 -

1   *deportability*, eligibility for waivers, and eligibility for any other form of relief." §§ 208.2(c)(3)(i),

2   1208.2(c)(3)(i) (emphasis order). Accordingly, his removal order cannot be deemed vacated or

3   otherwise set aside as a result of these proceedings, and its status as administratively final is

4   untouched. See Guzman Chavez, 594 U.S. at 536.

5         Moreover, to the extent that Respondents' arguments hinge on the now-dissolved

6   automatic stay of removal from the Ninth Circuit, that argument is now moot. Respondents argue

7   that "Petitioner is currently in the pre-removal period and detained under 8 U.S.C. § 1226(c)

8   because there is stay of the final removal order to Mexico (sic.)[6] by the Ninth Circuit," but that

9   stay was dissolved by the Ninth Circuit's denial of Petitioner's motion to stay removal on the

10  merits on January 14, 2026. ECF No. 19 at 11; see also ECF No. 23-1.

11        Therefore, L.R. cannot be detained under § 1226(c). Instead, his detention is governed by

12  8 U.S.C. § 1231(a) based on his final order of removal. See supra Part IV(A); Guzman Chavez,

13  594 U.S. at 544 ("'the [noncitizen] cannot go back in time, so to speak, to § 1226.'") (quoting

14  Guzman v. Hott, 940 F.3d 867, 888 (4th Cir. 2019) (Richardson, J., dissenting)).

15        **B.  Due Process and INA Challenges to Detention**

16        With this in mind, the Court considers whether Petitioner is subject to mandatory

17  detention pursuant to § 1231(a). He is not. The Executive Office of Immigration Review ordered

18  Petitioner removed on April 25, 2023. See ECF No. 13-1 at 2. As explained in the previous

19  section, Petitioner's removal order became administratively final on March 14, 2025, at the latest.

20  Thus, for the purpose of this inquiry, the latest Petitioner's removal period began running

21  was March 14, 2025, and it lapsed on June 12, 2025—*i.e.*, 90 days later. See 8 U.S.C.

22  § 1231(a)(1)(A). As soon as it did, Petitioner entered the post-removal period and was no longer

23  subject   to   § 1231(a)(2)(A)'s   mandatory   detention   requirement.   See   8   U.S.C.

24  § 1231(a)(3); Arteaga-Martinez, 596 U.S. at 578–79 (citations omitted).

25        ***i.  Presumption of Reasonability***

26        Because Petitioner is within the post-removal period, the Court must decide whether his

27

28        [6] To be clear, there is no order of removal to Mexico, only an order of removal to El Salvador and an order deferring removal to El Salvador.

ongoing detention is presumptively reasonable. The Court finds that it is not. To recap, it is presumptively reasonable for DHS to detain a non-citizen for up to "*six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Petitioner's final order of removal is nearly three years old, and his statutory removal period ended, at minimum, approximately seven months ago. Therefore, his ongoing detention exceeds the bounds of that which is presumptively permissible under the INA and the Constitution. See Zadvydas, 533 U.S. at 701.

### ii. *Foreseeability of Removal*

After a noncitizen has been in detention for six months post-removal order, they need only provide a "good reason to believe" that their removal cannot occur in the reasonably foreseeable future to be granted relief under Zadvydas. 533 U.S at 702. If the noncitizen makes that showing, the burden shifts, and the government then bears the burden of proof to show that the continued detention is reasonable. See id. To prove reasonableness under this prong, the government must prove that removal is likely to occur within the reasonably foreseeable future. See id. In instances of third country removal, this Court has found that removal cannot be deemed as likely to occur in the reasonably foreseeable future if the government cannot identify a country that will accept the noncitizen. Cavieres Gomez, 2025 WL 3101994, at *5-6. In Cavieres Gomez, the Court adopted a three-step framework to determine whether a petitioner was likely to be removed in accordance with the Zadvydas standard, looking to the following factors: (1) whether the petitioner could be removed to his country of origin; (2) whether he was a citizen of another country; and (3) whether the government had identified a third country that would accept him. See id. at *5 (citing to Trejo v. Warden of ERO El Paso East Montana, No. EP-25-cv-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025).

Turning to the specific facts of this case, the Court finds that Petitioner has shown that his removal is not reasonably foreseeable. Petitioner was ordered removed on April 25, 2023, over two and half years ago. Despite an abundance of time, ICE has been unable to effectuate Petitioner's removal from the United States. This is unsurprising. ICE cannot deport Petitioner to his birth country because he has been granted withholding of removal to El Salvador. See ECF

No. 13-1 at 4-6. Moreover, while Respondents appear to have designated Mexico as a possible alternative, they have not properly initiated a procedure to fairly adjudicate Petitioner's claims pertaining to removal to Mexico nor have they made any showing that Mexico would accept Petitioner. To the contrary, when Respondents nearly removed Petitioner to Mexico in June, they specifically instructed him not to tell the Mexican government about his criminal record. See ECF No. 13-1 at 60. On this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future," as he has shown that he cannot be removed to his country of origin based on the grant of withholding of removal to El Salvador, that he is not a citizen of another country, and that the government has not properly identified a third country that would accept him. Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701); see also Cavieres Gomez, 2025 WL 3101994, at *5 ("Petitioner is not required to 'show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable,' only that that he has 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'") (quoting Zadvydas, 533 U.S. at 701-02) (citation omitted).

    The burden thus shifts to Respondents to rebut this showing. However, Respondents have entirely failed to provide any meaningful response to Petitioner's argument. See generally ECF No. 19. If anything, Respondents appear to argue that Petitioner's removal is not reasonably foreseeable because of his pending proceedings before the Ninth Circuit. See ECF No. 19 at 9 (arguing that the length of Petitioner's detention is attributable to the "delay" incurred by Petitioner's efforts to pursue remedies and emphasizing that these proceedings are ongoing). To the extent Respondents concede to Petitioner's argument that removal is unlikely to occur within the reasonably foreseeable future, the Court too agrees.

    First, Petitioner cannot be lawfully deported to El Salvador unless, and until, his grant of withholding of removal is properly terminated pursuant to Respondents' own binding regulations. See generally 8 C.F.R. § 1208.24, invalidated on other grounds by Nijjar v. Holder, 689 F.3d 1077, 1085–86 (9th Cir. 2012); see also Gutierrez v. Holder, 70 F.3d 900, 901–902 (9th Cir. 2013) (relying on 8 C.F.R. § 1208.24 to evaluate the termination of a grant of withholding of

removal); see also Backcountry Against Dumps v. Fed. Aviation. Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("[F]ederal agenc[ies] . . . [are] obliged to abide by the regulations [they] promulgate[ ].") (citations and internal quotation marks omitted). Second, although Respondents are attempting to deport Petitioner to a third country, specifically Mexico, Respondents have yet to identify any concrete progress they have made towards ensuring Mexico would be willing to accept him. Moreover, Respondents have not supplied any adequate process to evaluate Petitioner's fear-based claims concerning removal to Mexico. On this record, the Court is unwilling to find that Petitioner's removal is imminent and finds Respondents have failed to meet their burden under Zadvydas.

At best, Respondents have established a *possibility* of Petitioner's removal at some point in the indeterminate future, after adequate process occurs. This is woefully insufficient to establish a "significant likelihood of removal in the reasonably foreseeable future," Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) (citations omitted). Instead, the Court finds that Petitioner has been condemned to a "removable-but-unremovable limbo," whereby he is legally— but not practically—removable from the United States. See Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citation omitted). Accordingly, his ongoing detention is statutorily and constitutionally unlawful, and he must "be released into American society." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 347–48 (2005).

### C. Third Country Removal

The Court next turns to Petitioner's procedural claims regarding third country removal. Petitioner asserts that Respondents have attempted to remove Petitioner to Mexico, a country other than the one designated on his removal order and one where Petitioner fears persecution and harm. Petitioner challenges this third country removal as unlawful under the due process class of the Fifth Amendment because he has not been afforded an opportunity to have his fear-based claims heard by an immigration court as it pertains to Mexico. See U.S. CONST. amend. V. Respondents again fail to offer any meaningful response to these challenges, entirely ignoring the matter in their responsive briefing. Despite this failure to respond constituting consent to granting relief on this ground, the Court addresses the merits of Petitioner's argument.

1       This Court has received an influx of similar cases over the last few months and recently

2  held that DHS interview screenings alone are not sufficient due process to effectuate third country

3  removal. See Cavieres Gomez, 2025 WL 3101994, at *6. In another, similar case in this District,

4  the Court found again that failure to provide the petitioner with a hearing on potential third country

5  removal to Mexico constituted a due process violation. See Perez v. Bondi, No. 2:25-cv-02390-

6  CDS-BNW, 2026 WL 84492, at *3 (D. Nev. Jan. 12, 2026). Because of the factual and legal

7  similarities between the instant case, Cavieres Gomez, and Perez, the Court finds that L.R. too has

8  a due process right to receive meaningful notice and opportunity to present his fear-based claim to

9  an immigration judge before DHS deports him to any third country.

10       This position is well-supported by existing case law. "Immigration proceedings must

11  provide the procedural due process protections guaranteed by the Fifth Amendment." Vilchez v.

12  Holder, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing Lacsina Pangilinan v. Holder, 568 F.3d 708,

13  709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation

14  that, given his capacities and circumstances, he would have a reasonable opportunity to raise and

15  pursue his claim for withholding of deportation.'" Nguyen v. Scott, et al., No. 2:25-cv-01398, 2025

16  WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting Aden v. Nielsen, 409 F.Supp.3d 998,

17  1009 (W.D. Wash. 2019) (citing Mathews v. Eldridge, 424 U.S. 319, 349 (1976)). "[I]ndividuals

18  whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they

19  will have the opportunity to prepare and present relevant arguments and evidence." Andriasian v.

20  I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999)). "In the context of country of removal designations,

21  last minute orders of removal to a country may violate due process if an immigrant was not

22  provided an opportunity to address his fear of persecution in that country." Najjar v. Lynch, 630

23  Fed. App'x. 724, 724 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in

24  accordance with the ample case law above, the Court holds that Petitioner has a due process right

25  to receive meaningful notice and an opportunity to have his fear-based claim fully adjudicated

26  before an immigration judge before DHS can deport him to Mexico, or any other third country.[7]

27

28

---

[7] Because the Court finds Petitioner is entitled to his sought-after relief, an individualized hearing before an IJ, on due process grounds, it need not reach a determination on whether the stated policy violates the APA.

### D.  Scope of Relief

Petitioner requests relief in the form of immediate release and injunctive relief barring the government from removing Petitioner to Mexico or any other third country until his fear-based claims have been fully adjudicated before an immigration judge (and any subsequent appeals). When granting relief for a due process violation, a court may tailor the relief to the specific problem that gives rise to the violation. See Morrisssey v. Brewer, 408 U.S. 471, 481 (1972).

As it relates to Petitioner's continued detention, Zadydas states that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699-700. In addition, Zadvydas provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." Id. at 700. Accordingly, the remedy for a successful Zadvydas claim is generally release of the habeas petitioner under conditions of supervision. Because the Court finds that Petitioner's continued detention by Respondents violates Petitioner's Fifth Amendment due process rights, pursuant to the framework set forth in Zadvydas, the Court finds the appropriate remedy is immediate release, subject to reasonable terms of supervision under 8 U.S.C. § 1231(a)(3).[8]

Second, Petitioner requests that the Court prohibit Respondents from removing him to Mexico (or any third country) without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen

---

[8] 8 U.S.C. § 1231(a)(3) provides:

If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—

    (A) to appear before an immigration officer periodically for identification;
    (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
    (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
    (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

Petitioner's immigration court proceedings to seek fear-based relief from removal. For the reasons discussed above, and due to the multiple, erroneous near-removals of L.R. by Respondents, the Court grants this requested relief: Respondents are ordered to provide adequate notice to both Petitioner and his counsel of any third country removal and are enjoined from removing Petitioner to Mexico or any other third country without affording due process an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

## VI.    CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that Petitioner's Amended Petition (ECF No. 13) is **GRANTED**. Defendants must **IMMEDIATELY RELEASE** Petitioner by no later than 5:00 P.M. on **January 21, 2026**, subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to Mexico, or any other third country, without providing Petitioner with (1) adequate notice of intent to seek removal to a third country and (2) due process in the form of reopened immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order (ECF No. 11) is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that the Amended Motion (Second) for Temporary Restraining Order (ECF No. 30) is **DISMISSED as moot.**

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**DATED:** January 21, 2026.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**